UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

SYED ALI,

      Plaintiff,

v.                                Case No. 3:19cv1689-MCR-HTC

KELLY BARTON, et al.,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Syed Ali, proceeding *pro se*, brings this action alleging constitutional violations and tort claims against Defendants Kelly Barton, Richard Spiegel, Chad Smith, and Kevin Schneider, employees of the United States Navy. ECF Doc. 1. This matter is before the Court on Defendants' Motion to Dismiss. ECF Doc. 31. Upon careful consideration of the parties' written submissions, the record, and the relevant law, the undersigned respectfully recommends that Plaintiff's complaint be DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction. Namely, Plaintiff's claims are barred by the *Feres* doctrine.[1]

---

[1] *See Feres v. United States*, 340 U.S. 135 (1950).

## I.    BACKGROUND

At the time of the events set forth in the complaint, Plaintiff was a United States Navy Reservist stationed in Pensacola, Florida. Plaintiff's complaint names four (4) defendants, all of whom were also employed by the United States Navy during the events alleged in the complaint: Naval Criminal Investigation Special Agent Kelly Barton, Naval Officers Chad Smith and Kevin Schneider, and Petty Officer Richard Spiegel. The complaint sets forth the following factual allegations, the truth of which is accepted for purposes of this Report and Recommendation.

From October 2017 through April 2019, Plaintiff was placed under active investigation "with [a] designation of TEMDU Disciplinary ACC 390."[2]   ECF Doc. 1 at 6. On January 30, 2018, while Plaintiff was at his apartment with his wife, he was called into work and instructed to bring his cellphone. When Plaintiff arrived at work, he was "involuntarily escorted to the Naval Criminal Investigations Service (NCIS) office at Naval Air Station (NAS) Pensacola." *Id.* at 7. Plaintiff was made to wait for nearly an hour, at which time Defendant Barton arrived and escorted Plaintiff into an interrogation room.

---

[2] According to Defendants, Agent Barton was investigating a domestic disturbance involving Plaintiff and his wife that was witnessed by Navy servicemen. As part of that investigation, Agent Barton learned from Defendant Spiegel that he and other Navy servicemen were blackmailed by Plaintiff to change their statements about the disturbance. ECF Doc. 31 at 2.

While in the interrogation room, Plaintiff alleges Barton "rubbed her hand all over [his] body in a manner that was unprofessional and felt like a violation." *Id.* At Barton's request, Plaintiff handed over his cellphone, but he refused to unlock it. Barton told Plaintiff that "agents were going [to] physically force [him] to unlock [his] phone" and that she would have Plaintiff's supervisor order him to unlock his phone. *Id.* Plaintiff did not unlock his phone for Barton, but Barton nonetheless kept the phone and then "proceeded to process [Plaintiff] that seemed like [he] was getting arrested. She took DNA swab and fingerprints but never told [Plaintiff] what [he] was charged for." *Id.* Plaintiff was then escorted back to base.

On February 1, 2018, Plaintiff was called to work after working hours and, when he arrived, he was again involuntarily escorted to the NCIS Office. Plaintiff was taken to a conference room with Defendant Schneider, who allegedly made discriminatory remarks about Plaintiff and his wife. Plaintiff was then given a written order from his superior to unlock his phone "with the pin in Civilian Federal Agents presence." *Id.* at 8. Plaintiff protested that forcing him to unlock his phone was a violation of his constitutional rights, but "they responded with more threats and physical intimidation." *Id.* For instance, Schneider stood up and leaned forward and gave Plaintiff a "death stare" and said, "I am about to lose my cool." *Id.* Thus, Plaintiff complied and unlocked his phone.

On April 30, 2018, Plaintiff filed an "Article 138" against Defendant Smith "for the violation of [his] constitutional rights inherent in their forcing [him] to unlock [his] phone." *Id.* As a result, Schneider "singled [Plaintiff] out overtly for extra scrutiny and suspicion." *Id.*

On July 4, 2018, Plaintiff saw Barton "snooping outside of [his] apartment." *Id.* at 9. When Barton realized Plaintiff saw her, Barton "ran [downstairs] and hid in the bushes" and eventually drove away. *Id.* Plaintiff filed a stalking complaint with the Escambia County Sheriff's Office ("ECSO") as well as a civil injunction for stalking through the County Court. However, on July 18, 2018, Barton "followed [Plaintiff] to Harbor Freight, walking behind [him] deliberately and threateningly." *Id.* Thus, the next day, Plaintiff filed a second stalking complaint with the ECSO.

On July 26, 2018, Barton "enter[ed] [Plaintiff's] apartment with an overbroad search warrant" and seized "all electronics including [Plaintiff's] wife's laptop, ipad, cellphone, and . . . wedding DVD." *Id.* Plaintiff takes issue with both the issuance of the warrant (repeatedly noting that it was overly broad and sought in bad faith) as well as its execution (noting that it was "clumsily and brutally executed"). Plaintiff alleges the warrant was obtained "using false and coached statements by an individual who has a proven history of, and who has not been charged for, making intentionally false statements." *Id.* That individual was Defendant Spiegel, who provided "several false statements in exchange for graduation from the Naval

Training." *Id.* at 10. Specifically, Spiegel "gave raunchy, dirty statements about [Plaintiff's] wife and [Plaintiff] to picture [them] bad to appease" Schneider and Barton and stated that Plaintiff was physically abusing his wife. *Id.* Plaintiff also alleges that the information used to establish probable cause for the warrant was "stale" in part because his initial domestic violence accusation occurred nearly a year prior in August of 2017.[3]

Plaintiff alleges that, during the execution of the warrant, Barton seized items not covered by the warrant; made a mess of his home and searched through his and his wife's personal belongings; exhibited "abusive and rude" behavior "intentionally so" and "fraudulently so"; and did not provide Plaintiff a receipt of the warrant until "nearly a week after the execution of the warrant." *Id.* at 19. Ultimately, "[t]he Navy chose not to go to trial but simply dispose[d] of the allegations in a NonJudicial Setting." *Id.*

Based on the foregoing, Plaintiff alleges that Defendants "intentionally violated constitutional rights that every United States Citizen is entitled to," namely, his Fourth and Fifth Amendment rights. *Id.* at 20. Plaintiff also alleges several tort claims against the Defendants for "harassment," "stalking," and "intentional

---

[3] Plaintiff states that the accusation "was almost a year ago on 18th August 2018." ECF Doc. 1 at 11. The Court presumes, however, based on the timeline of events set forth by Plaintiff, that Plaintiff meant August 18, 2017.

infliction of emotional [and] physical distress." *Id.* at 6.    Plaintiff alleges

Defendants' conduct was in retaliation for his filing various complaints against

Defendants.    As relief, Plaintiff seeks "an unconditional apology and then actual

damage of [his] property, [his] knee that was further injured because of their action,

mental counseling for [himself] and [his] wife and lost wages, moving pay." *Id.* at

22.

## II.    DEFENDANTS' MOTION TO DISMISS

Defendants have moved for dismissal based on Federal Rule of Civil

Procedure 12(b)(1) for lack of jurisdiction.[4]    Motions pursuant to Rule 12(b)(1) take

one of two forms: a "facial attack" on subject matter jurisdiction based on the

complaint's allegations taken as true or a "factual attack" based on evidentiary

matters outside of the pleadings.    *McElmurray v. Consol. Gov't of Augusta-

Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) (citing *Lawrence v. Dunbar*,

919 F.2d 1525, 1529 (11th Cir. 1990)).    Defendants state that, as to Plaintiff's tort

claims under the Federal Tort Claims Act (FTCA), Defendants are presenting a

---

[4] Defendants have also moved to dismiss the tort claims and the *Bivens* claims under Federal Rule of Civil Procedure 12(b)(6). As to the tort claims, Defendants state that they are absolutely immune from liability under the Westfall Act. ECF Doc. 31 at 10. As to the *Bivens* claims, Defendants argue they are entitled to qualified immunity. *Id.* at 16. Because the undersigned finds that the Court lacks subject matter jurisdiction over this action under the *Feres* doctrine, the undersigned finds it unnecessary to address the merits of these claims. The undersigned notes, however, that the Westfall Act is inapplicable since there has been no certification by the Attorney General that the Defendants were acting within the scope of their office or employment at the time of the incident. Moreover, the Westfall Act requires substitution of the United States as a defendant. *See Osborn v. Haley*, 549 U.S. 225, 233 (2007).

factual challenge on failure to exhaust grounds. As to the *Feres* doctrine, Defendants state they are raising a facial challenge to this Court's jurisdiction.

As an initial matter, the Court need not address Defendants' failure to exhaust argument as to the FTCA claims. First, in his response, Plaintiff admits the FTCA does not "provide[] any remedy for the Plaintiff" and clarifies that he only seeks to assert violations of his constitutional rights under *Bivens*. ECF Doc. 35 at 19 ("[t]he complaint clearly states the [actions by Defendants] violated the Constitutional rights of the Plaintiff"). Second, Plaintiff does not provide any evidence disputing the Declaration of Randall Russell, Head, Tort Claims Branch, Claims & Tort Litigation, Office of the Judge Advocate General, Department of the Navy, confirming that the Navy was unable to identify any administrative tort claim filed by Plaintiff with the Navy. ECF Doc. 31-2 at 2. Third, the *Feres* doctrine is a bar to Plaintiff's FTCA *and Bivens* claims.

## III.   THE *FERES* DOCTRINE

In *Feres v. United States*, 340 U.S. 135 (1950), the family of a deceased active-duty serviceman, who died in a fire after an emergency alarm system in his on-base housing failed to operate, sued the United States for damages. *Id.* at 137. The Supreme Court, however, held that "the [g]overnment is not liable for claims under the [FTCA] for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." *Id.* at 146. The Supreme Court

subsequently expanded the *Feres* doctrine in *Chappell v. Wallace*, holding that "enlisted military personnel may not maintain a suit to recover damages from a superior officer for alleged constitutional violations." 462 U.S. 296, 305 (1983). The Supreme Court then reaffirmed *Chappell*'s reasoning and continued to expand the doctrine in *United States v. Stanley*, holding that the *Feres* doctrine bars all *Bivens* claims for injuries that arise out of, or are incurred in the course of, activity incident to service regardless of whether an officer-subordinate relationship exists. 483 U.S. 669, 683–84 (1987).

Since *Stanley*, the Supreme Court has continued to apply the *Feres* doctrine, and the broader *Stanley* "incident to service" test, extremely liberally.[5] Indeed, as the Ninth Circuit noted in *Pringle v. U.S.*, 208 F.3d 1220 (10th Cir. 2000):

> In recent years, the Supreme Court has broadened *Feres,* to the point where it now encompasses, at a minimum, *all* injuries suffered by military personnel that are even remotely related to the individual's *status* as a member of the military. Courts applying the *Feres* doctrine have given a broad reach to *Feres*' "incident to service" test and have barred recovery by members of the armed services for injuries that at first blush may not have appeared to be closely related to their military service or status. *Practically any suit that implicates the military's judgments and decisions runs the risk of colliding with* Feres.

---

[5] In 2019, the House passed H.R. 2500, the National Defense Authorization Act for Fiscal Year 2020, which, if passed by the Senate and signed into law, would result in a partial departure from the *Feres* doctrine by allowing service members to file suit against the United States for medical malpractice claims under certain circumstances. *See* H.R. 2500, Sec. 729, adding 28 U.S.C. § 2681. The bill was placed on the Senate Legislative Calendar on August 11, 2020.

*Id.* at 1223–24 (quotations, citations, and alterations omitted).  And, as the Fourth Circuit noted in *Cioca v. Rumsfeld*, 720 F.3d 505 (4th Cir. 2013), "[N]o case has permitted a *Bivens* action for money damages in the military setting." *Id.* at 517.

One of the key rationales cited by the Supreme Court in support of *Feres* and its progeny is that the claims barred by *Feres*, if permitted, "would involve the judiciary in sensitive military affairs at the expense of military discipline and effectiveness." *U.S. v. Johnson*, 481 U.S. 681, 690 (1987) (citing *U.S. v. Shearer*, 473 U.S. 52, 59 (1985)).  The Supreme Court has reasoned that the military is "a specialized society," *id.* at 690–91 (citing *Parker v. Levy*, 417 U.S. 733, 743 (1974)), which "must foster instinctive obedience, unity, commitment, and esprit de corps" to accomplish its mission. *Id.* at 691 (citing *Goldman v. Weinberger*, 475 U.S. 503, 507 (1986)).  "[A] suit based upon service-related activity necessarily implicates the military judgments and decisions that are inextricably intertwined with the conduct of the military mission." *Id.*

The Eleventh Circuit has set forth a three-part test to determine whether an injury is "incident to military service": (1) the service member's duty status; (2) the place where the injury occurred; and (3) the service member's activities at the time of the injury. *See Koury v. Secretary, Dept. of Army*, 488 F. App'x 355, 357 (11th Cir. 2012) (citing *Speigner v. Alexander*, 248 F.3d 1292, 1298 (11th Cir. 2001)).  The purpose of the test is to separate cases that may interfere with military discipline and

command decisions from those that do not, and courts must pay particular attention to whether the service member's claims will implicate civilian courts in conflicts involving the military structure or decisions. *Id.* (citing *Pierce v. United States*, 813 F.2d 349, 352 (11th Cir. 1987)).

### a.    *Feres* Bars Plaintiff's Action

Applying the three (3) factors established by the Eleventh Circuit, the undersigned finds that Plaintiff's claims are barred by *Feres*. First, as to duty status, there is no dispute that Plaintiff was a service member in the United States Navy. While Plaintiff argues that the *Feres* doctrine does not apply because he was a reservist and not on active duty, Plaintiff's reserve status is irrelevant. *See Norris v. Lehman*, 845 F.2d 283, 287 (11th Cir. 1988) (noting that dispositive inquiry does not require that service member be on active duty but rather that he had a relationship to the service such that the events at issue arose out of activity incident to service); *Quintana v. U.S.*, 997 F.2d 711, 712 (10th Cir. 1993) ("active duty status is not necessary for the *Feres* 'incident to service' test to apply").

As to the second factor, the place where the majority of alleged wrongful conduct occurred was at Naval Air Station Pensacola ("NAS"). Although Plaintiff argues his injuries are not related to military service and did not occur on a military installation, ECF Doc. 35 at 13, his allegations tell a different story. Plaintiff complains about alleged improper conduct by Defendant Barton occurring in the

interrogation room in the NCIS office at NAS. ECF Doc. 1 at 7. The seizure of Plaintiff's cell phone by Barton, which Plaintiff claims was wrongful, also occurred at NAS. *Id.* Plaintiff also alleges that Defendant Schneider made discriminatory remarks in the interrogation room; that he was threatened and intimidated in that room; and that he was forced to unlock his cell phone in that room. *Id.*

The only event that occurred outside of NAS was the execution of the search warrant at Plaintiff's apartment. However, the fact that Plaintiff was off duty and in his apartment off base when the warrant was executed does not change the fact that the warrant was executed incident to his service in the Navy *and* as part of an NCIS investigation. *See U.S. v. Shearer*, 473 U.S. at 52. For instance, in *Shearer*, an Army private was off duty and away from base when he was kidnapped and murdered by another serviceman. *Id.* The Court of Appeals found *Feres* was not applicable, and the Supreme Court subsequently reversed, stating:

> The Court of Appeals erroneously placed great weight on the fact that respondent's son was off duty and away from the base when he was murdered; the situs of the murder is not nearly as important as whether the suit requires the civilian court to second-guess military decisions, and whether the suit might impair essential military discipline.

*Id.*

Indeed, under the third factor, Plaintiff cannot dispute that the activities that Plaintiff alleges were injurious to him—i.e., being pressured to unlock his phone, the execution of a search warrant, and the subsequent search of Plaintiff's

apartment—all arose out of, or were incurred in the course of, that investigation.

Defendants include with their motion a letter to the United States Department of

Justice from G.E. Lattin, Director of the General Litigation Division for the

Department of the Navy Office of the Judge Advocate General, stating:

> The incidents in question were investigated through a command investigation conducted by Information Warfare Training Command Corry Station (IWTCCS) and a criminal investigation conducted by the [NCIS], and are documented in an NCIS Report of Investigation. . . .
> . . . **[Defendants] were working and acting within the scope of their employment within the Department of the Navy.** Specifically, Special Agent Barton opened the NCIS investigation into Mr. Ali. IT3 Spiegel was a witness in NCIS's investigation, and was required under Navy regulations to report criminal misconduct. CDR Smith was the Commanding Officer at IWTCCS. He directed that the initial command investigation be conducted and then requested NCIS's assistance for the criminal investigation. CWO4 Schneider was the IWTCCS legal officer, and provided administrative support throughout the investigation.

ECF Doc. 31-1 (emphasis added).

Plaintiff does not dispute the authenticity of the letter, nor does he dispute that

such investigation occurred; rather, he argues that the investigation was undertaken

with "malice" and "the intent to harass, upset, intimidate, and harm the Plaintiff and

his family." ECF Doc. 35 at 14. However, even accepting that allegation as true,

such argument does not preclude application of *Feres*. *See, e.g.*, *Koury*, 488 F.

App'x (holding race and national origin-based discrimination claims were barred by

*Feres*); *Klay v. Panetta*, 924 F. Supp. 2d 8 (D.D.C. 2013) (holding allegations of

"brutal and criminal" rape and retaliation were barred by *Feres* even though the

alleged actions clearly furthered no military function or purpose); *Smith v. U.S.*, 196 F.3d 774 (7th Cir. 1999) (applying *Feres* when an off-duty service member alleged she was sexually assaulted by her superior officer at an off-base hotel).

Also, it is irrelevant under the *Feres* doctrine whether Plaintiff sues Defendants in their individual or official capacities. *See Smith v. U.S.*, 877 F.2d 40, 41 (11th Cir. 1989) ("courts, relying on the same policy reasons that bar suit against the Government for tort claims arising out of military service, have applied the *Feres* doctrine to immunize military defendants in their individual capacities"); *Walsh v. U.S.*, 2006 WL 2346420, at *1 (M.D. Pa. Aug. 11, 2006) ("the *Feres* doctrine applies to intentional tort claims against military defendants in their individual capacities") (citing *Jaffee v. U.S.*, 663 F.2d 1226, 1234 (3d. Cir. 1981) ("the policy concerns expressed [in *Feres*] seem equally applicable to a case . . . where government officials are sued in their individual capacity for intentional torts") and *Heilman v. U.S.*, 731 F.2d 1104, 1112 (3d Cir. 1984) ("[d]espite the often harsh results . . . [c]ourts have construed *Feres* to preclude claims of . . . intentional or constitutional torts by individuals")).

Plaintiff relies on *Brooks v. U.S.*, 337 U.S. 49 (1949) in support of his argument that *Feres* should not apply; however, *Brooks* is inapplicable here. First, it was decided before *Feres* and therefore does not implicate the *Feres* doctrine. Second, *Brooks* dealt with whether the United States could be held liable under the

FTCA for injuries sustained by soldiers while they were on furlough when the privately owned vehicle in which they were riding was struck by a negligently operated army truck.  The Supreme Court held that military membership alone does not automatically deprive a claimant of an FTCA action; rather, a claimant's injury must also, in some way, be related to military service.  *Id.* at 52.  As set forth above, Plaintiff was a Navy reservist at the time of the events in question, the Defendants were employed by the Navy, *and* Plaintiff's alleged injuries arise out of an active military investigation involving whether one of its reservists (Plaintiff) was intimidating other servicemen.  Thus, this case is very different from *Brooks.*

Plaintiff also relies on *Martin v. Naval Criminal Investigative Service*, 539 F. App'x 830 (9th Cir. 2013), in which a civilian brought a *Bivens* suit against the NCIS.  However, *Martin* is also distinguishable.  Notably, the issue before the court was whether claims against the defendant should be dismissed on qualified immunity grounds.  *Id.* at 831.  The defendant in *Martin* did not move for dismissal under *Feres.  Id.*  In fact, the court makes only a passing reference to *Feres* in finding cases cited by defendant to be "inapposite because Ms. Martin's lawsuit involves neither claims brought by servicemen against their superior officers nor 'injuries that 'arise out of or are in the course of activity incident to service.'"  *Id.* at 832.  As the Court explained, the plaintiff in *Martin* complained about a federal law enforcement official harassing and intimidating her in her home in retaliation for protected speech

that had nothing to do with "military discipline in any meaningful way." *Id.* at 833. In other words, the conduct complained of in *Martin* had no valid law enforcement purpose. The same cannot be said here—while Plaintiff may take issue with whether the warrant was properly procured, the issuance of the warrant and the execution of the warrant arose out of an active Navy criminal investigation involving conduct among servicemen.

Plaintiff's case is akin to *Gadbois v. U.S.*, 58 F. App'x 310 (9th Cir. 2003), in which plaintiff service members brought claims under the federal Wiretap Act. The Ninth Circuit concluded that "the actions of the individual [defendant] service members . . . arose out of an investigation into potential Uniform Code of Military Justice violations by [plaintiffs]. The service members were acting in an investigative and disciplinary capacity, and therefore any injuries incurred by [plaintiffs] arose from activities 'incident to service.'" *Id.* at 311 (citing *Feres*, 340 U.S. at 146 and *Mier v. Owens*, 57 F.3d 747, 751 (9th Cir. 1995) (holding that plaintiff's "retaliation claim cannot stand because the retaliatory acts are all integrally related to the military's structure" and "[i]nvestigation is an act central to the military's unique concerns regarding discipline and control")).

As set forth above, the crux of Plaintiff's allegations against Defendants are that they violated his constitutional rights in conducting and carrying out an investigation into his conduct—conduct which involved alleged intimidation of

other servicemen.  This is the exact type of case that the Supreme Court sought to prevent in *Feres*: "a suit based upon service-related activity [that] implicates . . . military judgments and decisions," which "may interfere with military discipline and command decisions," and which "implicate[s] civilian courts in conflicts involving the military structure or decisions."  *See Johnson*, 481 U.S. at 690; *Koury*, 488 F. App'x at 357.  Thus, this Court lacks jurisdiction over Plaintiff's claims for monetary damages against Defendants (whether based on FTCA or *Bivens*).

### b.    Plaintiff's Request for Leave to Amend

Plaintiff asks the Court to allow him to amend his complaint to omit Smith and Schneider as defendants "in order not to give the impression that Military discipline is affected."  ECF Doc. 35 at 10.  However, the Court finds that such an amendment would be futile, as it would not alter application of the *Feres* doctrine as to Barton, an NCIS Special Agent, and Spiegel, a Naval officer.  *See Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007) ("[l]eave to amend a complaint is futile when the complaint as amended would still be properly dismissed").

Barton's alleged status as a civilian does not render *Feres* inapplicable to her. The Eleventh Circuit has recognized that "[t]he Supreme Court has relied on *Feres* to bar claims of constitutional violations raised under *Bivens* . . . against individual defendants, both military, and civilian"  and that "[t]he Circuit Courts have held that state law claims as well as federal law claims are so barred, both as to military

employees, and as to civilian employees." *Smith v. U.S.*, 877 F.2d 40, 41 (11th Cir. 1989) (citing *Stanley*, 483 U.S. 669 (applying *Feres* to bar *Bivens* claims for damages against military *and* civilian employees for injuries resulting from the military's intentional administration of LSD to unwitting volunteers)).  Thus, Barton's alleged status as a civilian employee of NCIS does not preclude application of *Feres*—particularly where Plaintiff's Commanding Officer "directed that the initial command investigation [of Plaintiff] be conducted and then requested NCIS's assistance for the criminal investigation."  ECF Doc. 31-1.

### c.    Plaintiff's Additional Requested Relief

In addition to monetary damages, which are barred by *Feres*, Plaintiff also seeks from Defendants "an unconditional apology."  ECF Doc. 1 at 22.  The Court, however, does not have the power to order such relief.  *See Woodruff v. Ohman*, 29 F. App'x 337, 346 (6th Cir. 2002) (holding that "the district court exceeded its equitable power when it ordered [defendant] to apologize" and noting that the court was "not commissioned to run around getting apologies" (citing *McKee v. Turner*, 491 F.2d 1106, 1107 (9th Cir. 1974))); *Garcia v. Cameron*, 2010 WL 5477765, at *4 (M.D. Fla. Dec. 30, 2010) ("[n]or does the Court have the power to mandate jail officials to provide Plaintiff with an oral or public apology").

## IV.    CONCLUSION

Because Plaintiff's claims against Defendants occurred incident to his service in the Navy and arise out of or occurred during an active Navy criminal investigation, this Court lacks jurisdiction to address the claims on the merits.

Accordingly, it is respectfully RECOMMENDED that:

1.    Defendants' Motion to Dismiss (ECF Doc. 31) be GRANTED.

2.    This action be DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction.

3.    The clerk be directed to close the file.

Done in Pensacola, Florida this 25th day of August, 2020.

_s/ Hope Thai Cannon_

**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within 14 days of the date of this order.  Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.  A copy of objections shall be served upon the Magistrate Judge and all other parties.  A party failing to object to a Magistrate Judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.